**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

| | | |
|---|---|---|
| **MICHAEL JAMES HENDERSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Civil Action No. 3:20-00612** |
| | ) | |
| **PAUL DIAMOND, *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |

<u>**PROPOSED FINDINGS AND RECOMMENDATION**</u>

Pending before the Court is the Defendants Diamond, Davis, Mays, Albright, Jarvis, Reid, Pauley, Irving, Akers, Brewer, Fleming, Aldridge, Moore, and Littlejohn's Motion for Summary Judgment (Document No. 61), filed on May 12, 2021. The Court notified Plaintiff pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had the right to file a response to Defendants' Motion and submit Affidavit(s) or statements and/or other legal or factual material supporting his claims as they are challenged by the Defendants in moving to dismiss. (Document No. 63.) Plaintiff filed his Response in Opposition on June 16, 2021, and Defendants filed their Reply on June 23, 2021. (Document Nos. 65 and 66.) By Memorandum Opinion and Order entered on July 1, 2021, United States District Judge Robert C. Chambers granted Defendant Mankin's Motion to Dismiss (Document No. 29) and Defendants Pauley, Davis, Albright, Reid, Irving, Mays, and Jarvis' Motion to Dismiss (Document No. 59). Therefore, the undersigned has considered the above Motion for Summary Judgment as it relates to the remaining Defendants (Defendants Diamond, Akers, Brewer, Fleming, Aldrige, Moore, and Littlejohn). Having examined the record and considered the applicable law, the undersigned has concluded that Defendants Diamond, Akers, Brewer, Fleming, Aldrige, Moore, and Littlejohn's Motion for

Summary Judgment (Document No. 61) should be granted.

## PROCEDURAL BACKGROUND

On September 17, 2020, Plaintiff, acting *pro se*,[1] filed his Application to Proceed Without Prepayment of Fees and Costs and his form Complaint. (Document Nos. 1 and 2.) In his Complaint, Plaintiff names the following as Defendants: (1) Paul Diamond, Captain; (2) Major Flemming; (3) Superintendent Aldrige; (4) Lt. Davis; (5) Officer Mays; (6) Officer Albright; (7) Officer Jarvis; (8) Capt. Reid; (9) Capt. Pauley; (10) Lt. Irving; (11) Sgt. Akers; (12) Sgt. Brewer; (13) Jo Moore; (14) Corporal Littlejohn; and (15) HSA Kelly. (Document No. 2, p. 4.) Plaintiff alleges that after he was assaulted by other inmates, Officer Littlejohn placed Plaintiff in segregation. (Id., pp. 4 and 6.) Plaintiff complains that he was later informed by Sgt. Brewer and Sgt. Akers that Plaintiff "was getting charged with Assault, Causing a Disturbance, Refusing an Order, and Abusive Language." (Id., p. 6.) Plaintiff explains that his disciplinary hearing was conducted by Sgt. Brewer, who found Plaintiff guilty of Assault. (Id.) Plaintiff states that he inquired "how this was possible," and he was "told [he] better be worried about seg." (Id.) Plaintiff alleges that Capt. Diamond then came and placed Plaintiff in administrative segregation saying that Plaintiff "had a violent crime, a history of violence, and a long misconduct history." (Id.) Plaintiff alleges that "all of these reasons were lies" and this was "done to keep [him] in seg." (Id.) Plaintiff states that he is a "first-time drug offender." (Id.) Plaintiff further complains that he was not present for his administrative segregation hearing, "but lesser staff members lied and attested that inmate was present." (Id.) Plaintiff states that he filed grievances concerning "these illegal acts" and "Major Flemming, Jo Moore, and Superintendent Aldrige assured [Plaintiff] that Capt. Diamond would hold [his]

---

[1]  Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

hearing." (Id.) Plaintiff, however, complains that he did not get an "Ad Seg" hearing as it was scheduled and he remained in segregation. (Id.) Plaintiff alleges that this constitutes a violation of his constitutional rights. (Id., pp. 6 – 7.)

Plaintiff complains that when he had his "Ad Seg" hearing, "Capt. Diamond, Lt. Phillips and HSA Kelly kept bringing up a past misconduct which [Plaintiff] had dismissed." (Id., p. 7.) Plaintiff further complains that he was informed that "a non-violent Class 1 misconduct was violent." (Id.) Plaintiff explains that Capt. Daimond said Plaintiff's "destruction of property was violent and checked the box for violent and assaultive behavior." (Id.) Plaintiff complains that "as of 9/30/2020, [he] is still being held in seg until such time as Capt. Diamond sees fit." (Id.) Plaintiff alleges that he was also informed that Major Flemming and Superintendent Aldrige said not to "let [Plaintiff] out." (Id.) Plaintiff alleges that this constitutes a violation of his constitutional rights. (Id.)

Finally, Plaintiff complains that his legal mail is being opened outside his presences. (Id., p. 5.) Plaintiff alleges that while in segregation, Officers Mays, Jarvis, and Albright have gave him "opened and copied legal mail." (Id., p. 7.) Plaintiff requests monetary relief and for "officers to be punished for their constant illegal behavior." (Id., p. 5.)

By Order entered on September 22, 2020, United States Magistrate Judge Cheryl A. Eifert granted Plaintiff's Application to Proceed Without Prepayment of Fees and Costs. (Document No. 4.) On September 29, 2020, Plaintiff filed a letter informing the Court that Sgt. Brewer improperly opened his legal mail outside his presence. (Document No. 20.) Plaintiff further complained that Sgt. Brewer had Plaintiff moved to a cell close to the toilets in retaliation for naming him as a defendant in the above action. (Id.) On October 13, 2020, Defendant Kelly A. Mankin filed a Motion to Dismiss for Failure to State a Claim and Memorandum in Support. (Document Nos. 29

3

and 30.) By Order entered on October 14, 2020, the above matter was transferred to the undersigned for total pretrial management and submission of proposed findings of facts and recommendation for disposition. (Document No. 32.) Notice pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on October 15, 2020, advising him of the right to file a response to Defendant Mankin's Motion to Dismiss. (Document No. 33.) On November 13, 2020, Plaintiff filed his Response in Opposition to Defendant Mankin's Motion to Dismiss. (Document No. 36.)

On January 15, 2021, Defendants Davis, Albright, Reid, and Pauley filed a Motion to Dismiss for Failure to Serve. (Document No. 43.) Notice pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on January 19, 2021, advising him of the right to file a response to Defendants Davis, Albright, Reed, and Pauley's Motion to Dismiss. (Document No. 44.) In response, Plaintiff filed a Motion to Amend Complaint on February 24, 2021. (Document No. 53.) Specifically, Plaintiff states that he would like to amend his Complaint to remove Defendants Davis, Albright, Reid, Pauley, Irving, Mays, and Jarvis from the Complaint. (<u>Id.</u>)

On May 6, 2021, Defendants Pauley, Davis, Albright, Reid, Irving, Mays, and Jarvis filed their Motion to Dismiss. (Document No. 59.) Defendants Pauley, Davis, Albright, Reid, Irving, Mays, and Jarvis noted that Plaintiff appears to be requesting the voluntarily dismissal of his claims against them pursuant to Rule 41(a)(1)(A)(i). (<u>Id.</u>) Therefore, Defendants Pauley, Davis, Albright, Reid, Irving, Mays, and Jarvis requested that they be dismissed from the above action. (<u>Id.</u>) Notice pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on May 7, 2021, advising him of the right to file a response to Defendants Pauley, Davis, Albright, Reid, Irving, Mays, and Jarvis' Motion to Dismiss. (Document No. 60.)

4

On May 12, 2021, Defendants Diamond, Davis, Mays, Albright, Jarvis, Reid, Pauley, Irving, Akers, Brewer, Fleming, Aldridge, Moore, and Littlejohn's Motion for Summary Judgment and Memorandum in Support. (Document Nos. 61 and 62.) First, Defendants argue that they are immune pursuant to the Eleventh Amendment because Plaintiff's claims against them "are being brought against them in their official capacities." (Document No. 62, pp. 7 – 9.) Second, Defendants argue that Plaintiff cannot state a valid Fourteenth Amendment due process claim even if Plaintiff's claims could be construed as claims against the Defendants in their individual capacities. (Id., pp. 10 – 12.) Third, Defendants argue that they are entitled to qualified immunity. (Id., p. 12.) Finally, Defendants argue that Plaintiff's claim for prospective injunctive relief should be denied as moot because Plaintiff is no longer incarcerated at the Western Regional Jail. (Id., pp. 12 – 13.) As Exhibits, Defendants attach the following: (1) A copy of the Affidavit of Captain Paul Diamond (Document No. 6-1, pp. 1 – 4.); (2) A copy of an Incident Report dated May 16, 2020 (Id., pp. 5 – 8.); (3) A copy of an Incident Report dated June 17, 2020 (Id., pp. 9 – 14.); (4) A copy of an Incident Report dated July 20, 2020 (Id., pp. 15 – 16.); (5) A copy of an Incident Report dated September 25, 2020 (Id., pp. 17 – 18.); and (6) A copy of the Affidavit of Major Christopher Fleming (Document No. 61-2.). Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on May 13, 2021, advising him of the right to file a response to Defendants' Motion for Summary Judgment. (Document No. 63.)

By Proposed Findings and Recommendations entered on June 10, 2021, the undersigned recommended that District Court grant Defendant Makin's Motion to Dismiss (Document No. 29), grant Plaintiff's Motion to Amend (Document No. 53), grant Defendants Pauley, Davis, Albright, Reid, Irving, Mays, and Jarvis' Motion to Dismiss (Document No. 59), deny as moot Defendants Davis, Albright, Reed, and Pauley's Motion to Dismiss for Failure to Serve (Document No. 43),

and refer the matter back to the undersigned for further proceedings as to the remaining Defendants (Defendants Diamond, Akers, Brewer, Fleming, Aldrige, Moore, and Littlejohn). (Document No. 64.)

On June 16, 2021, Plaintiff filed his Response in Opposition to Defendants Diamond, Davis, Mays, Albright, Jarvis, Reid, Pauley, Irving, Akers, Brewer, Fleming, Aldridge, Moore, and Littlejohn's Motion for Summary Judgment. (Document No. 65.) On June 23, 2021, Defendants Diamond, Davis, Mays, Albright, Jarvis, Reid, Pauley, Irving, Akers, Brewer, Fleming, Aldridge, Moore, and Littlejohn filed their Reply. (Document No. 66.)

By Memorandum Opinion and Order entered on July 1, 2021, United States District Judge Robert C. Chambers adopted the undersigned's recommendation thereby granting Defendant Makin's Motion to Dismiss (Document No. 29), granting Plaintiff's Motion to Amend (Document No. 53), granting Defendants Pauley, Davis, Albright, Reid, Irving, Mays, and Jarvis' Motion to Dismiss (Document No. 59), denying as moot Defendants Davis, Albright, Reed, and Pauley's Motion to Dismiss for Failure to Serve (Document No. 43), and referring the matter back to the undersigned for further proceedings as to the remaining Defendants (Defendants Diamond, Akers, Brewer, Fleming, Aldrige, Moore, and Littlejohn). (Document No. 67.)

Accordingly, the undersigned will now consider the above Motion for Summary Judgment as it relates to the remaining Defendants (Defendants Diamond, Akers, Brewer, Fleming, Aldrige, Moore, and Littlejohn).

## THE STANDARD

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's

claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will support Plaintiff's claims, summary judgment is appropriate.

## ANALYSIS

"[F]ederal courts must take cognizance of the valid constitutional claims of prison inmates." Turner v. Safley, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987). Title 42 U.S.C. § 1983 provides a remedy for violations of all "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." Thus, Section 1983 provides a "broad remedy for violations of federally protected civil rights." Monell v. Dep't of Social Services, 436 U.S. 658, 685, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Generally speaking, to state and prevail upon a claim under 42 U.S.C. § 1983, a Plaintiff must prove that (1) a person acting under color of State law (2) committed an act which deprived him of an alleged right, privilege or immunity protected by the Constitution or laws of the United States.

### A.    Claims Against Defendants in their Official Capacities:

In their Motion for Summary Judgment, Defendants Diamond, Akers, Brewer, Fleming, Aldrige, Moore, and Littlejohn (herein after "Defendants") argue they are entitled to immunity pursuant to the Eleventh Amendment of the United States Constitution because Plaintiff's claims are brought against them under their official capacities. (Document No. 62, pp. 7 – 9.) Defendants argue that the following allegations against them are in their official capacities: (1) Defendant Littlejohn told Plaintiff he was going to "adseg" after he was involved in an altercation with other inmates; (2) Defendants Brewer and Akers told Plaintiff of the disciplinary charges against him after the altercation with other inmates; (3) Defendants Fleming, Moore, and Aldridge "assured" Plaintiff that Defendant Diamond would hold a hearing for him regarding his assignment to "adseg;" (4) Defendant Diamond did not timely hold hearings and/or he and Defendant Brewer did not follow proper procedure in conducting the hearings on Plaintiff's repeated assignments to "adseg;" (5) Defendant Aldridge said not to let Plaintiff out of "adseg;" and (6) Defendant Brewer opened Plaintiff's "legal" mail outside his presence. (Id., pp. 7 – 8.) Defendants argue that, in essence, Plaintiff is complaining that Defendants did not follow proper procedure in handling the hearings related to Plaitniff's assignments to "adseg" and/or in handling his "legal" mail. (Id.) Defendants assert that Plaintiff's claim against some of the Defendants "involve nothing more than statements made to him about his "adseg" status. (Id.) Defendants conclude that it is clear that "all of the claims being made by Plaintiff against the moving Defendants are claims against the Defendants acting in their official capacities, and thus are claims against the State itself, and the Defendants are therefore entitled to Eleventh Amendment immunity." (Id., p. 8.) Defendants argue that none of the three narrow exceptions to Eleventh Amendment immunity apply. (Id., pp. 8 – 9.) Defendants, therefore, conclude that they are entitled to Eleventh Amendment immunity. (Id., p. 9.) Plaintiff fails to address this issue in his Response. (Document No. 65.)

8

Suits against a state or state agencies for monetary damages are barred by the Eleventh Amendment to the United States Constitution.[2] See Will v. Michigan Dept. of State Police, 491 U.S. 58, 66, 109 S.Ct. 2304, 2309, 105 L.Ed.2d 45 (1989). The Eleventh Amendment protects states from being sued in federal court on the basis of state law. See Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 117, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); Westinghouse Elec. Corp. v. West Virginia Dept. of Highways, 845 F.2d 468, 470 (4th Cir.), cert. denied, 488 U.S. 855, 109 S.Ct. 143, 102 L.Ed.2d 116 (1988). The Eleventh Amendment immunity not only applies to states and state agencies, but extends to suits filed against state officials when "the relief sought and ordered has an impact directly on the State itself." Pennhurst, 465 U.S. at 117, 104 S.Ct. at 917. See also Fauconier v. Clarke, 966 F.3d 265, 279-80 (4th Cir. 2020)(an individual that is employed by an arm of the State and is sued in his or her official capacity is immune from suit under the Eleventh Amendment); Cromer v. Brown, 88 F.3d 1315, 1332 (4th Cir. 1996)("This immunity extends to 'arm[s] of the State,' (citations omitted) including state agencies and state officers acting in their official capacity. (citations omitted)). "Neither a state nor its officials acting in their official capacities are 'persons' under § 1983." Will, supra, 491 U.S. at 71, 109 S.Ct. at 2312. In Will, however, the Supreme Court held that "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State." Id.; also see Frew v. Hawkins, 540 U.S. 431, 437, 124 S.Ct. 899, 157 L.Ed.2d 855 (2004)("the Eleventh Amendment permits

---

[2] The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

9

suits for prospective injunctive relief against state officials acting in violation of federal law").

A person acting under color of state law can be sued in either his or her official or personal capacity for violating a prisoner's constitutional rights. Thus, a prison official may be sued in his or her personal capacity for the official's own acts or omissions occurring under color of state law. If the prison official is sued in his or her personal capacity, the prison official may be liable for money damages. If the prison official, however, is sued in his or her official capacity, the prison official may not be sued for money damages because the official is entitled to sovereign immunity. In Hafer, the Court explained that the real party in interest in an official capacity claim is the governmental entity and the target of the claim is the entity's policy or custom. Hafer v. Melo, 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). "Personal-capacity suits, on the other hand, seek to impose individual liability upon a government officer for actions taken under color of state law." Id. To the extent Plaintiff seeks monetary damages from the Defendants in their official capacity, the undersigned finds that Plaintiff's claims are barred by the Eleventh Amendment and should be dismissed. See Adams v. Ferguson, 884 F.3d 219 (4th Cir. 2018)("[T]he Eleventh Amendment does not bar an award of damages against an official in his personal capacity that can be executed only against the official's personal assets.") Liberally construing Plaintiff's Complaint, however, the undersigned finds that Plaintiff allegations appear to be against the Defendants in the personal capacity for actions taken under color of state law. Specifically, Plaintiff alleges that Defendants failed to follow proper procedures concerning the hearings related to Plaintiff's placement in administrative segregation and the handling of his "legal" mail. Plaintiff does not appear to target the prison's policies or customs, but complains of the individual Defendants' failure to follow or comply with the policies or procedures. Thus, the undersigned finds that the foregoing claims are asserted against Defendants in their personal capacities. To the

extent Plaintiff has asserted official capacity claims against Defendants seeking monetary relief, however, the undersigned respectfully recommends that the District Court dismiss Plaintiff's claims.

**B.    Due Process Claim Regarding Administrative Segregation:**

In their Motion for Summary Judgment, Defendants argue Plaintiff cannot state a valid Fourteenth Amendment due process claim against them in their individual capacities. (Document No. 62, pp. 10 – 12.) Defendants argue that administrative segregation is the type of confinement that is "ordinarily contemplated by a prison sentence." (Id., p. 11.) Citing Baker v. Lyles, 904 F.2d 925, 931 (4th Cir. 1990), Defendants state that "administrative segregation is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." (Id.) Defendants explain that Plaintiff was placed in "administrative segregation on multiple occasions to break him up from other equally disruptive inmates, to protect officers from continued assaults by the Plaintiff, and to protect the property of the Western Regional Jail from further damage by the Plaintiff." (Id.) Defendants further contend that "Plaintiff has not been subjected to an 'atypical, significant deprivation' of his freedom that would give rise to a liberty interest." (Id., p. 10.) Defendants explain that "the conditions experienced by the Plaintiff in administrative segregation at the Western Regional Jail were 'similar in most respects to those experienced by inmates in the general population.'" (Id.) Defendants conclude that "Plaintiff's disciplinary action falls with the expected parameters of his prison sentence, and does not give rise to a claim of any violation of due process rights." (Id., p. 11.)

In Response, Plaintiff complains he was found guilty of obscene language on May 20, 2020, because he told Defendant Akers to "suck my dick." (Document No. 65, p. 2.) Plaintiff appears to contend that this was not obscene language because "at no point did I use any

derogatory, racial slurs" or "curse or yell at officers." (Id.) Next, Plaintiff claims he was being "punished for refusing to be photographed" on June 17, 2020. (Id.) Plaintiff complains that even though he was found not guilty of the June 17, 2020 incident, this incident was used in Plaintiff's administrative segregation hearing. (Id.) Plaintiff alleges that according to WVDOC policy, "if the hearing officer finds the inmate not guilty, all references to the alleged rule violation cannot be used for classification or evaluation." (Id., p. 3.) Plaintiff contends that he was placed in administrative segregation as punishment him for his insubordination concerning his refusal to be photographed. (Id.)

In Reply, Defendants contend that Plaintiff's Response "basically reiterates the allegations in his Complaint, that the moving Defendants failed to follow proper procedure during his disciplinary hearings for assignment to administrative segregation." (Document No. 66, p. 2.) Defendants argue that Plaintiff's Response "again demonstrates that Plaintiff appears to be attempting to assert a procedural due process claim under the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution." (Id., p. 3.) Defendants asserts that Plaintiff has failed to present any evidence that he had a valid liberty interest or that he was subjected to any atypical, significant deprivation that would give rise to a liberty interest. (Id.) Defendants note that Plaintiff failed to even address this issue in this Response. (Id.)

In his Complaint, Plaintiff appears to allege that Defendants violated his due process rights by holding him in segregation. (Document No. 2.) Although the Fourteenth Amendment of the United States Constitution prohibits a State from depriving "any person of life, liberty, or property, without due process of law," the range of protected liberty interests for defendants convicted and confined in prison are significantly reduced for the period of incarceration. See U.S. Const. amend. XIV, § 1; Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). The fact of conviction and

12

imprisonment implies the defendant's transfer of his liberty to prison officials, who in their broad discretion, administer his sentence. <u>Gaston</u>, 946 F.2d at 343. Nevertheless, "confinement to prison does not strip a prisoner of *all* liberty interests." <u>Id.</u> (emphasis added) To determine whether an inmate retains a certain liberty interest, the Court must look to the nature of the claimed interest and determine whether the Due Process Clause applies. <u>See</u> <u>Board of Regents v. Roth</u>, 408 U.S. 564, 570-71, 92 S.Ct. 2701, 2705-06, 33 L.Ed.2d 548 (1972). An inmate holds a protectable right in those interests to which he has a legitimate claim of entitlement. <u>Greenholtz v. Inmates of Nebraska Penal and Corr. Complex</u>, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103, 60 L.Ed.2d 668 (1979)(quoting <u>Roth</u>, 408 U.S. at 577, 92 S.Ct. 2709). In <u>Gaston</u>, the Fourth Circuit determined that an inmate possesses a claim of entitlement in those interests "which were not taken away expressly or by implication, in the original sentence to confinement." <u>Id.</u> at 343. The Supreme Court held in <u>Sandin v. Conner</u>, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), that in order to show the deprivation of a liberty interest protected by the Due Process Clause, an inmate must show either that: (1) the conditions exceed the sentence imposed in such an unexpected manner as to give rise to protection by the Due Process Clause or (2) the confinement creates an atypical or significant hardship in relation to the ordinary incidents of prison life. <u>Id.</u>, 515 U.S. at 484, 115 S.Ct. at 2300 (citations omitted). Absent allegations indicating that there has been a restraint upon the inmate's freedom which imposes "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," the inmate's claims have no merit. <u>Id.</u>

Applying the principles set forth in <u>Sandin</u>, the undersigned finds that Plaintiff's placement in segregation is neither a condition which exceeded his original sentence in an unexpected manner nor creates an atypical or significant hardship in relation to the ordinary incidents of prison life. In the instant case, Plaintiff merely alleges that Defendants misapplied their own policies and

13

procedures. There is no allegation or indication that Plaintiff's confinement in segregation exceed

his original sentence of incarceration in such an unexpected manner as to give rise to a due process

violation or that such created an atypical or significant hardship. In his Affidavit, Defendant

Diamond explains, in pertinent part, as follows:

> [T]he administrative segregation unit is required to comply with, but is not limited
> to, the followings: a) Rooms shall be well ventilated, adequately lighted,
> appropriately heated and cooled, and maintained in a sanitary condition at all times;
> b) Inmates in segregation shall have the opportunity to maintain an acceptable level
> of personal hygiene, unless procedures present an undue security hazard; c) Food
> provided to inmates in segregation shall be the same quality and quantity as that
> provided to inmates in the general population; d) Inmates in segregation may have
> access to reading materials, and e) Inmates in segregation may be allowed to
> participate in facility programs to the same extent as the general population,
> provided their participation is consistent with the safety and security of the facility
> and community.

(Document No. 61-1, p. 3.) The undersigned finds that the foregoing conditions do not create an

atypical or significant hardship in relation to the ordinary incidents of prison life.[3] Administrative

segregation, in and of itself, does not deprive an inmate of a liberty interest or create an atypical

hardship. See Beverati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997); also see Baker v. Lyles, 904

F.2d 925, 931 (4th Cir. 1990)("[A]dministrative segregation is the sort of confinement that inmates

---

[3] In *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997), the Fourth Circuit determined that the
following conditions in administrative segregation did not implicate Plaintiffs' liberty interest:
> ...cells were infested with vermin; were smeared with human feces and urine;
> and were flooded with water from a leak in the toilet on the floor above. And,
> [the inmates] assert, they were forced to use their clothing and shampoo to clean
> the cells. In addition, Inmates maintain that their cells were unbearably hot and
> that the food they received was cold. Furthermore, Van Aelst submitted an
> affidavit indicating that those assigned to administrative segregation did not
> receive clean clothing, linen, or bedding as often as required by the regulations
> governing administrative segregation; that they were permitted to leave their
> cells three to four times per week, rather than seven, and that no outside
> recreation was permitted; that there were no educational or religious services
> available; and that food was served in considerably smaller portions.

should reasonably anticipate receiving at some point in their incarceration."). Furthermore, the Due Process Clause does not give an inmate a liberty interest in a certain prison classification. See Hewitt v. Helms, 459 U.S. 460, 477 n. 9, 103 S.Ct. 864, 874 n. 9, 74 L.Ed.2d 675 (1983)(stating that the "transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence"); Slezak v. Evatt, 21 F.3d 590, 594 (4th Cir. 1994), citing Montanye v. Haymes, 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976)(the federal Constitution "vests no liberty interest in inmates in retaining or receiving any particular security or custody status as long as challenged conditions or degree of confinement is within sentence imposed and is not otherwise violative of Constitution"); Altizer v. Paderick, 569 F.2d 812 (4th Cir. 1978)(holding that federal due process constraints are not implicated because the classification of a State prison inmate is a matter of State prison officials' discretion); and Meachum v. Farno, 427 U.S. 215, 225 (1976)(stating that the transfer of an inmate to a higher security facility does not violate a liberty interest). Thus, Plaintiff's claim of a liberty interest in remaining free from segregation or in the fact of his confinement in segregation is without merit. To the extent Plaintiff complains that Defendants misapplied their own polices, practices, and customs concerning disciplinary proceedings and administrative segregation, Plaintiff's claim must fail because due process is not implicated where there is no liberty interest. See Riccio v. County of Fairfax, 907 F.2d 1459, 1469 (4th Cir. 1990)(If the state law grants more procedural rights than the Constitution requires, a State's failure to abide by that law is not a federal due process issue); Donohue v. Diggs, 2011 WL 795889, at * 3 (W.D.Va. March 1, 2011)("Moreover, a state's failure to abide by its own procedural regulation is not a federal due process issue and is, therefore, not actionable under § 1983")(internal citation omitted); Petway v. Lappin, 2008 WL 629998 (N.D.W.Va. Mar. 5, 2008)(finding that plaintiff's "due

process complaints concerning either the misapplication of policy and procedures, or a lack of official rules and regulations, must fail" because the inmate had no protected liberty interest in avoiding segregated confinement"); also see Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384, 2393, 162 L.Ed.2d 174 (2005)("We need reach the question of what process is due only if the inmate establishes a constitutionally protected liberty interest"). Accordingly, the undersigned respectfully recommends that the District Court grant Defendants' Motion for Summary Judgment as to the foregoing claim.

### C.      Plaintiff's Claim Regarding the Opening of his "Legal" Mail:

In their Motion for Summary Judgment, Defendants argue that Plaintiff has failed to state a plausible claim regarding the opening of his "legal" mail. (Document No. 62, pp. 11 – 12.) Defendants note that Plaintiff appears to be asserting a Fourteenth Amendment due process claim concerning the opening of his mail outside his presence. (Id., p. 11.) Citing Ash v. Greenwood, 2018 WL 4201398 (S.D.W.Va. Aug. 30, 2018), Defendants argue that Plaintiff's claim should be dismissed because Plaintiff was neither deprived of his mail nor suffered any actual harm. (Id.) Defendants explain that even though "some of his mail may have been opened by one or more of the moving Defendants[4] in order for them to make copies of the same before providing his mail to him, the Plaintiff was not deprived of his mail items." (Id., p. 12.) Thus, Defendants conclude that they are entitled to summary judgment because Plaintiff cannot prevail on a due process claim under the Fourteenth Amendment. (Id.)

In Response, Plaintiff states "[o]n October 2, 2020, Sgt. Brewer completed an incident

---

[4] Although Plaintiff alleged that Officers Mays, Jarvis, and Albright gave him opened "legal mail," Plaintiff voluntarily dismissed all claims against these Defendants. Thus, Defendant Brewer is the only remaining defendant that Plaintiff asserts a claim based on the opening of his "legal mail."

16

report pertaining to his handling of my legal mail" on September 25, 2020. (Document No. 65, p. 1.) Plaintiff complains that on September 25, 2020, Defendant Brewer opened his legal mail outside of Plaintiff's presence. (Id.) Plaintiff alleges that Defendant Brewer stated he opened Plaintiff's mail outside his presence because "he could not bring the copy machine and shredder into the section." (Id.) Plaintiff contends that Defendant Brewer could have opened the mail in Plaintiff's presence, then took the mail back to the office for copying. (Id.)

In Reply, Defendants contend that Plaintiff's Response "basically reiterates the allegations in his Complaint that the moving Defendants failed to follow proper procedure during his disciplinary hearings for assignment to administrative segregation." (Document No. 66, p. 2.) Defendants state that even though "Plaintiff's response states, as did his Complaint, that some of his mail may have been opened by one or more of the moving Defendants outside of his presence, he does not allege that he suffered any actual harm, and thus 'fails to state a plausible claim for relief.'" (Id., p. 3.) Thus, Defendants contend they are entitled to summary judgment. (Id., p. 4.)

The First Amendment governs a prisoner's rights concerning inmate mail. Restrictions on inmate mail, however, may be justified in furtherance of substantial governmental interest of security, order, or rehabilitation. See Procunier v. Martinez, 416 U.S. 396, 413-14, n. 14, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1997), overruled on other grounds, Thornburgh v. Abbott, 490 U.S. 401, 404, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989). The arbitrary or capricious opening of legal mail, or the "blatant disregard" for regulations concerning the handling of legal mail, results in a violation of the First Amendment. See Lavado v. Keohane, 992 F.2d 601, 610-11 (6th Cir. 1993). Isolated incidents of the opening of legal open, however, generally does not constitute a constitutional violation. See Berger v. White, 12 Fed.Appx. 768, 771 (10th Cir. 2001)(finding that "isolated incidents of opening constitutionally protected legal mail, 'without any evidence of

17

improper motive or resulting interference with [inmate's] right to counsel or access to courts,' do not support a civil rights claim); <u>Buie v. Jones</u>, 717 F.2d 925, 926 (4th Cir. 1983)(finding that the isolated instances of opening a prisoner's legal open outside of his presence was not of constitutional magnitude); <u>Gardner v. Howard</u>, 109 F.3d 427, 431 (8th Cir. 1997)("We have never held or suggested that an isolated, inadvertent instance of opening incoming confidential legal mail will support a § 1983 damage action."); <u>Smith v. Maschner</u>, 899 F.2d 940, 944 (10th Cir. 1990)(Although the defendant admitted to opening one piece of Smith's constitutionally protected legal mail by accident, such an isolated incident does not give rise to a constitutional violation where there was no evidence of improper motive or a resulting interference with Smith's right to counsel or access to the courts); <u>Bruscino v. Carlson</u>, 654 F.Supp. 609, 618 (S.D.Ill. 1987), <u>aff'd</u>, 854 F.2d 162 (7th Cir. 1988)(finding that "isolated incidents of interference with legal mail" may not state a constitutional violation without a showing of "a systematic pattern or practice of interference"); <u>Morgan v. Montanye</u>, 516 F.2d 1367, 1371 (2nd Cir. 1975)(finding no constitutional violation concerning four instances of the improper opening of legal mail outside of the inmate's presence where the inmate suffered no damage whatsoever); <u>Ash v. Greenwood</u>, 2018 WL 4201398, * 7 (S.D.W.Va. Aug. 30, 2018)(J. Goodwin)("Courts have previously held that isolated incidents of mail tampering are usually insufficient to establish a constitutional violation. Rather, an inmate must show the prison officials 'regularly and unjustifiably interfered with' his or her mail."); <u>Lloyd v. Vincent</u>, 2004 WL 3249250 (D.S.C. Sept. 10, 2004)(finding that even assuming plaintiff's legal mail was opened outside his presence, plaintiff failed to raise a constitutional violation where there was no allegation or indication that the opening of the envelope denied him access to the courts or interfered with the ability to prosecute a case).

    In the instant case, Plaintiff appears to allege one incident concerning the opening of his

legal mail outside of his presence by Defendant Brewer. (Document No. 20.) In his Affidavit,

Defendant Fleming describes the incident as follows:

> 5.      During the time period of Plaintiff's incarceration at the Western Regional Jail, I, Major Fleming, was advised by Sgt. Brewer that Plaintiff had complained about his Legal Mail being opened outside of his presence.
>
> 6.      Additionally, Sergeant Brewer completed an incident report, on or about October 2, 2020, detailing the incident as described to me, Major Fleming, on September 25, 2020. The incident report stated that, on September 25, 2020, Sgt. Brewer was assigned the task of pass Legal Mail, including to the inmates in A Pod, Section 6, which included the Plaintiff, Michael Henderson. As Sergeant Brewer could not bring the copy machine and shredder into the section, because the plug-in cord could not reach into the day room, he opened Plaintiff's mail in the sally port of A-6 and 7, made copies of the contends in the envelope, and brought the mail to the Plaintiff. Plaintiff complained about the envelope being opened outside of his presence, so Sgt. Brewer retrieved the envelope, and showed the Plaintiff the envelope and all its contents. Sgt. Brewer then advised me, Major Fleming, about the incident and Plaintiff's complaint.
>
> 7.      I, Major Fleming, viewed a video recording of Sergeant Brewer opening and copying Plaintiff's Legal Mail on the day in question, and determined that Sgt. Brewer did not do anything improper with Plaintiff's mail items.
>
> 8.      I, Major Fleming, showed Sergeant Brewer an extension cord I had requested that maintenance put on the mail cart, so that the inmates on disciplinary detention, such as the Plaintiff, could see the mail opened in the day room.
>
> 9.      To my knowledge, the Plaintiff made no further complaints regarding his Legal Mail.
>
> 10.     At no time was the Plaintiff deprived of his Legal Mail, and the envelope and all of its contents were provided to the Plaintiff once Sergeant Brewer was able to make the necessary copies.

(Document No. 61-2, pp. 1 – 2.) Plaintiff does not dispute the foregoing. (Document No. 65.)

Plaintiff merely complains that it was "more than possible to open the mail in front of me at my

cell door, then walk down the stairs to the door where the copy machine and shredder are located."

(Id., p. 1.) Plaintiff does not allege that he suffered any harm or damage as a result of the opening

of his legal mail. The foregoing was clearly an isolated incident of the opening of Plaintiff's legal mail without any evidence improper motive, or interference with Plaintiff's right to counsel or access to the courts. Furthermore, the record reveals that Defendant Brewer was given corrective instructions on the use of an extension cord with the mail cart to prevent the incident from reoccurring. Accordingly, the undersigned finds that the above isolated incident of the opening of Plaintiff's legal mail by Defendant Brewer outside the presence of Plaintiff did not constitute a violation of Plaintiff's First or Fourteenth Amendment rights. See Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384, 2393, 162 L.Ed.2d 174 (2005)("We need reach the question of what process is due only if the inmate establishes a constitutionally protected liberty interest"); Experimental Holding, Inc. v. Farris, 503 F.3d 514, 519 (6th Cir. 2007)(citing Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 579, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972))("Without a protected liberty or property interest, there can be no federal procedural due process claim."). Accordingly, the undersigned respectfully recommends that the District Court grant Defendants' Motion for Summary Judgment as to the foregoing claim.

Based upon the foregoing, the undersigned finds it unnecessary to consider the other reasons which the Defendants have submitted for dismissal regarding Plaintiff's claims.

## PROPOSAL AND RECOMMENDATION

The undersigned therefore hereby respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** Defendants Diamond, Akers, Brewer, Fleming, Aldrige, Moore, and Littlejohn's Motion for Summary Judgment (Document No. 61), and **REMOVE** this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Robert

20

C. Chambers. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Chambers and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: October 22, 2021.



Omar J. Aboulhosn
United States Magistrate Judge